**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

BOILERMAKER-BLACKSMITH )
NATIONAL PENSION FUND, et al., )
　　　　　　　　　　　　　　　　)
　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　)　　CIVIL ACTION
v. )
　　　　　　　　　　　　　　　　)　　No. 12-2224-KHV
CALDWELL TANKS, INC., )
　　　　　　　　　　　　　　　　)
　　　　Defendant. )
_____)

## MEMORANDUM AND ORDER

Five employee benefit plans and their fiduciaries ("the Plans" or "the Funds")[1] bring suit against Caldwell Tanks, Inc. to collect delinquent contributions pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145 (Count I). The International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers ("the Union") brings suit to enforce two awards pursuant to Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §185, rendered by a joint labor-management committee pursuant to dispute resolution procedures established in the parties' collective bargaining agreement ("CBA") (Count II). This matter is before the Court on <u>Defendant's Renewed Motion To Dismiss Plaintiffs' Amended Complaint Or, In The Alternative, To Stay And Compel Arbitration</u> (Doc. #13) filed July 17, 2012. Defendant argues that the case should be

---

[1] Plaintiffs in Count I include the Boilermaker-Blacksmith National Pension Fund, Boilermakers National Health and Welfare Fund, Boilermakers National Annuity Trust, and Boilermakers' Apprenticeship and Training Funds; Richard L. Calcara as a fiduciary of those funds; The Mobilization, Optimization, Stabilization and Training Fund; and Roger Erickson as a fiduciary of The Mobilization, Optimization, Stabilization and Training Fund. Plaintiff in Count II is the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers.

dismissed or stayed while the parties are compelled to participate in mandatory arbitration proceedings contemplated by the applicable CBA. For the following reasons the Court overrules the motion.

**Legal Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiffs bear the burden of framing their complaint with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim when they plead factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant"s liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not

2

"shown" – that the pleaders are entitled to relief. Id. at 1950. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

**Factual Background**

The amended complaint alleges the following facts.

Each of the Funds is an "employee benefit plan" and a "multi-employer plan" within the meaning of 29 U.S.C. § 1002(3), (37). Defendant is a party to CBAs with the Union and is obligated to timely submit reports and fringe benefit contributions to the Funds on behalf of employees who have performed work under those CBAs. Defendant's contributions are due on a monthly basis in amounts determined by the number of hours of covered work that defendant's employees performed at rates the CBAs establish for each of the Funds. Defendant failed to properly report all hours of covered work from January 1, 2008 through October 31, 2011, and consequently failed to pay all of the contributions which it owed to the Funds. Defendant's failure to pay breached the CBAs and defendant is liable to the Funds for the delinquent contributions, costs of collection, attorney's fees, interest and liquidated damages.

The Union and defendant are parties to a CBA entitled the National Transient Division Articles of Agreement ("the NTD Agreement") which governs the terms and conditions of employment for certain of defendant's employees whom the Union represents. The NTD Agreement contains a procedure for resolving grievances that arise under the Agreement, the third step of which is to refer the matter to the Chairmen of the respective Union and contractor negotiating committees ("the Chairmen"). On October 7, 2011, the Union and defendant presented a grievance to the Chairmen. The grievance sought wages and benefits due under the NTD Agreement to defendant's

employees on a project known as the Gila Bend project. On November 15, 2011, the Chairmen issued a decision on the grievance ("the Grievance Decision"). They noted that defendant had conceded that the project was governed by the NTD Agreement and they so found. They further found that defendant had violated the NTD Agreement by not applying it to the Gila Bend project. As a remedy, they ordered defendant to pay the wage and fringe benefits required by the NTD Articles of Agreement. The Chairmen concluded: "We further rule that the parties are directed to meet and determine the appropriate amounts to be paid. We retain jurisdiction over this matter in the event that there is a dispute as to the remedy."

In a letter dated November 23, 2011, counsel for defendant referred to the Grievance Decision and noted that defendant was gathering information to assess what the appropriate amount of wages and fringe benefits would be. On December 14, 2011, defendant proposed to settle the grievance for a lump-sum payment to the Union of $47,756.11. By letter dated January 24, 2012, the Union rejected the proposal and informed defendant that the Funds were performing audits to determine what defendant owed on the Gila Bend project.[2] The Union audit concluded that defendant owed $318,966.68, and so informed defendant by letter dated April 5, 2012. Defendant did not directly respond to the dollar amount, but on April 10, 2012, its counsel sent letters: (1) to the Union's International Representative, noting that the Union had rebuffed defendant's request to meet to discuss the Grievance Decision and had rejected defendant's attempt to refer the grievance to arbitration, and notifying the Union that defendant was asking the Federal Mediation and Conciliation Service ("FMCS") to process its arbitration request; and (2) to the FMCS, asking for

---

[2] The Union rejected the offer because the NTD Agreement contained no provision for off-set of monies defendant claimed to have paid outside of the Agreement, and because the Grievance Decision required defendant to make payments to each of the Funds rather than to the Union.

4

a list of arbitrators.

On April 11, 2012, the Union sent a letter to the Chairmen, along with a copy of the April 10 letter from counsel for defendant, requesting that the Chairmen issue a decision on the Union's submission that defendant owed the Funds $318,966.68. On April 12, 2012, the Union sent a letter to the FMCS, advising that the Union was not participating in an arbitration and that the FMCS services were not required.

In a letter dated May 11, 2012, the Chairmen sent a letter to defendant and the Union because the matter had been referred to them pursuant to their retained jurisdiction, this time "to render a decision on the appropriate remedy for the Grievance resolved in our November 15, 2011 decision" ("the Remedy Amount Decision"). The Chairmen restated the parties' respective positions, noting that defendant had submitted no additional information beyond repeating an earlier position that the Chairmen had considered and rejected in its Grievance Decision. The Chairmen concluded as follows:

> Accordingly, the Committee finds that the total amount owed by Caldwell Tank, in accordance with the remedy ordered in our decision of November 15, 2011, is $318,966.68. Caldwell Tank is directed to remit this amount immediately to each of the above funds in the respective amounts stated above.[3]

Previously, on December 20, 2011, six days after it had proposed to settle the matter with a single lump-sum payment to the Union, counsel for defendant sent a letter to the Union which included the following language:

> In light of the fact that the [Gila Bend project] grievance has not been satisfactorily resolved based on Mr. Fineman's December 14, 2011 proposed settlement, Caldwell Tanks, Inc. hereby moves the above-referenced dispute to the arbitration committee for resolution. This action is being taken pursuant to **Article 31 – Adjustment of Grievances** subparagraph **Art. 31(c).**

---

[3] The letter included specific amounts that defendant was to pay to each plaintiff Fund.

The Union replied in a letter dated January 23, 2012, which stated in part:

> There is no dispute as to [the Grievance Decision]. The grievance panel sustained the grievance and awarded the appropriate remedy. There is no dispute that is ripe for arbitration. The only issue that remains is for your client to comply with the award of the grievance committee. Therefore, this matter is not subject to arbitration.

These letters reflect the parties' disagreement as to whether the arbitration provision of the NTD Agreement applies to the Gila Bend project grievance.

In the amended complaint, Count I alleges that defendant owes delinquent contributions to the Funds pursuant to ERISA, and Count II seeks to enforce the Grievance Decision and Remedy Amount Decision.

## **Analysis**

### **I. Motion To Dismiss**

Defendant argues that it has a contractual right to arbitrate the ongoing dispute between the parties with respect to defendant's liability and any amounts owed under the NTD Agreement. Accordingly, defendant asserts that plaintiffs' claims should be dismissed so that arbitration can proceed.[4] Plaintiffs do not dispute the hornbook statements that defendant recites concerning arbitration, e.g., the party seeking to compel arbitration has the burden to establish the existence of an agreement to arbitrate,[5] and once a party meets that burden a presumption in favor of arbitration

---

[4] As plaintiffs point out and defendant concedes, no language in the NTD Agreement arbitration provision suggests that it applies to delinquent contribution enforcement actions asserted by the Funds and their fiduciaries. The Court therefore overrules defendant's motion to dismiss Count I of the amended complaint.

[5] Smith v. Devlin Partners, L.L.C., No. 03-2380, 2004 WL 1490401, at *1 (D. Kan. July 2, 2004).

arises.[6] Defendant also asserts that the mere fact that the NTD Agreement contains an arbitration provision establishes a presumption of arbitrability, a statement that plaintiffs do not accept.

Article 31 of the NTD Agreement addresses the adjustment of grievances in progressive steps. After an employee files a written grievance, "[i]n the event a grievance or dispute is not satisfactorily settled by the employee and his Steward and/or union representative and the Contractor's foreman on the job site within ten (10) days, it shall be referred forthwith by the union representative to the Local Lodge Business Manager, NTD International Representative, and by the Contractor's foreman to the Contractor's office." NTD Agreement Art. 31(a), Doc. #13-1 at 2. The third step occurs "[i]f these in turn are not able to arrive at any agreement within fifteen (15) days, [then] the grievance or dispute shall be referred to the chairmen of the respective negotiating committees who shall render a decision." Id. Finally, if the grievance has not been resolved in the first three steps, the NTD Agreement calls for arbitration as follows:

> In the event any matter referred to the two chairmen as provided above is not settled within thirty (30) calendar days, the matter in dispute will be submitted in writing by the Union, or by the Contractor, or by both to an arbitration committee consisting of a representative of the Union, a representative of the Employer, and a third member to be chosen by those two (2) jointly. The decision of the majority of the arbitration committee shall be final and binding on the parties involved.

NTD Agreement Art. 31(c), Doc. #13-1 at 2. In this case, the Chairmen issued the Grievance Decision which clearly ruled that defendant had violated the NTD Agreement by not applying it to the Gila Bend project. Although they left it to the parties to perform the calculations, the Chairmen also determined the remedy and retained jurisdiction to resolve any disputes about the calculations of the remedy. The parties were unable to agree on the amount of the remedy, and the Union

---

[6] Id.

7

referred the matter back to the Chairmen pursuant to the Grievance Decision. Thirty days later, the Chairmen issued the Remedy Amount Decision.

Defendant argues that arbitration was the mandatory next step because a "decision" by the Chairmen does not equate to their having "settled" the grievance.[7] Defendant offers no support for its position, and the law provides none. Indeed, if the CBA contemplates a referral to the final step of the dispute resolution process only if the grievance is not resolved at an earlier step, an enforceable decision exists at whatever step in the process it is made. See Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., 372 U.S. 517, 519 (1963) (if award is made under instrument parties chose for definitive settlement of grievances under CBA, committee award is enforceable under LMRA even if not arbitration); Int'l Bhd. Of Elec. Workers Local Union No. 226 v. Wichita Elec. Co., Inc., No. 04-4028, 2005 WL 466206, at *2-3 (D. Kan. Feb. 4, 2005) ("Wichita Elec. Co.") ("arbitration" need not appear in specific section of CBA to make decision final and binding); Lackey Elec., Inc. v. Int'l Bhd. Of Elec. Workers Local Union No. 226, 351 F. Supp. 2d 1208, 1213 (D. Kan. 2005) (resolving dispute at Labor-Management Committee level is final and Council on Industrial Relations need not consider issue where CBA makes Council decisions "final and binding"); see also Int'l Bhd. of Elec. Workers, Local Union Nos. 12, 111, 113, 969 v. Prof'l Hole Drilling, Inc., 574 F.2d 497, 502 (10th Cir. 1978) (where CBA provided that joint committee decisions are final and binding, such decisions get same weight as arbitration award).

Defendant argues that the current procedural posture, where the Chairmen have rendered a

---

[7] Defendant does not say what should come of the Chairmen's Remedy Amount Decision, which presumably would be rendered an advisory opinion if the matter went to arbitration.

8

decision at the third step, must be the penultimate step because the only decision designated by the NTD Agreement as "final and binding" is the arbitration committee decision. Case law in this district rejects that argument. Wichita Elec. Co., 2005 WL 466206, at *2-3 (decision by first reviewing committee is final arbitration award even though not called "arbitration" in CBA and next reviewing council's decision is only one CBA describes as final and binding); Lackey Elec., Inc, 351 F. Supp. 2d at 1211-13 (same; referral to council occurs only if committee fails to agree, otherwise committee decision would be advisory only).

Finally, defendant argues that even if there was a settlement, it has the right to request arbitration because the Chairmen did not reach that settlement within 30 days of referral. See NTD Agreement Art. 31(c) ("In the event any matter referred to the two chairmen . . . is not settled within thirty (30) calendar days, the matter in dispute will be submitted in writing . . . to an arbitration committee"). The record does not support this argument. In a letter dated April 11, 2012, the Union "request[ed] that the chairmen issue a decision on the Union's submission;" the chairmen issued the Remedy Amount Decision on May 11, 2012.

The CBA does not require that the underlying grievance be arbitrated, and thus no basis exists for dismissing Count II of plaintiffs' amended complaint. For the same reason, the Court declines to stay these proceedings.

Accordingly, for the foregoing reasons, the Court **OVERRULES** Defendant's Renewed Motion To Dismiss Plaintiffs' Amended Complaint Or, In The Alternative, To Stay And Compel Arbitration (Doc. #13) filed July 17, 2012.

9

**IT IS SO ORDERED.**

Dated this 22nd day of May, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge